UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ANTHONY G.,                                                                                     :

                 Plaintiff,             :

                                                                  OPINION AND ORDER
    -v.-                                                      :      24 Civ. 3852 (GWG)

COMMISSIONER OF SOCIAL SECURITY,     :

                              Defendant.         :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

Plaintiff Anthony G. ("Anthony") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the April 25, 2024, decision of the Commissioner of Social Security finding his entitlement to disability benefits had terminated in October 2015, that he had been overpaid benefits, and that he is therefore liable for repayment. Anthony has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons that follow, Anthony's motion is denied.

I.     BACKGROUND

    A.     Procedural History

In June 1991, Anthony became entitled to disability insurance benefits (DIB) as a result of a disability with an onset date of December 2, 1990. See Administrative Record, filed September 30, 2024 (Docket # 13) ("R."), at 127.

---

[1] See Plaintiff's Notice of Motion on the Pleadings, filed January 9, 2025 (Docket # 24) ("Mem."); Commissioner's Brief in Opposition to Plaintiff's Brief Requesting Review of a Social Security Decision under 42 U.S.C. § 405(g), filed March 12, 2025 (Docket # 31) ("Opp."); Plaintiff's Reply Memorandum of Law in Support of His Motion for Judgment to Reverse Defendant's Determination of April 25, 2024, filed March 26, 2025 (Docket # 32) ("Reply").

On December 17, 2007, the Administration determined that Anthony was no longer disabled as of September 1, 2002, because he was found to have engaged in "substantial gainful activity" ("SGA").  Id. at 170.  The Administration further determined that Anthony was overpaid $110,355.60.  Id.  Anthony sought review of this decision and on November 16, 2009, an Administrative Law Judge ("ALJ") determined that the "Administration was incorrect in determining that he had performed substantial gainful activity" and that Anthony "was not overpaid."  Id. at 173.

On March 21, 2017, a continuing disability review determination found that Anthony's disability ceased because he had engaged in SGA beginning in July 2015.  Id. at 126, 127.  The Commissioner terminated Anthony's entitlement to disability benefits in October 2015 and found that Anthony was overpaid $37,759.60 in benefits from October 2015 to February 2017.  Id. at 126, 161-62.  Anthony sought review and a "reconsideration decision" dated July 13, 2017, affirmed that Anthony's disability "has ended and that [he was] not entitled to payments beginning in October 2015."  Id. at 214.

On August 21, 2017, Anthony sought review of this decision on the ground that Anthony had not engaged in SGA because the work he had performed was "supported and not competitive."  Id. at 223.  On January 9, 2020, Anthony appeared before ALJ Hilton Miller for a hearing.  Id. at 61.  On March 13, 2020, Judge Miller issued a decision finding that Anthony's disability ended on July 1, 2015, when Anthony began performing SGA and that Anthony was liable for the amount of $37,759.60 in overpayment.  Id. at 389-96.

Anthony sought review from the Appeals Council of the March 13, 2020, decision.  Id. at 406.  Because the Appeals Council was "unable to locate or redevelop the evidence," Anthony was granted "a new hearing and decision on the issues raised by his application."  Id.

On January 3, 2023, Anthony appeared before ALJ Mark Solomon.  Id. at 32.  On March 28, 2023, ALJ Solomon issued a decision concluding that Anthony "has been overpaid within the meaning of the Act."  Id. at 23.  The decision also addressed whether Anthony was entitled to waiver of the overpayment, ultimately concluding that recovery of the overpayment had not been waived.  Id. at 23-31.

On June 1, 2023, Anthony sought review from the Appeals Council.  Id. at 96.  On April 25, 2024, the Appeals Council upheld the ALJ's decision as to overpayment, finding that Anthony's "disability ended July 2015, his entitlement to disability benefits terminated in October 2015, and he is overpaid $37,759.60 in benefits and liable for repayment of the overpayment."  Id. at 6.  However, the Appeals Council vacated Judge Solomon findings as to waiver because "[w]aiver was not an issue before the Administrative Law Judge since the claimant did not file a waiver request and no waiver determinations were made by the Administration."  Id. at 5.

On May 13, 2024, Anthony filed the instant action challenging the Commissioner's decision.  See Complaint, filed May 13, 2024 (Docket # 1).

B.     March 28, 2023, Decision

The ALJ's decision found that Anthony was liable for repayment of $37,759.60, finding that (1) "[t]he claimant was overpaid benefits in the amount of $37,759.60 during the period October 1, 2015, to March 1, 2017 (20 CFR 404.504)"; (2) "[t]he claimant was not at fault in causing the overpayment (20 CFR 404.506(a), 404.507, and 404.510a)"; (3) "[r]ecovery of the overpayment does not defeat the purpose of Title II of the Act (20 CFR 404.508(a) and (b))"; and (4) "[r]ecovery of the overpayment would not be against equity and good conscience (20 CFR

3

404.509)." R. at 24-31. The Appeals Council upheld only the first of these findings, id. at 5, and thus we describe the decision only as it pertains to that finding.

The ALJ stated that the "record shows the claimant has worked as a union carpenter and has a pattern of working for many different employers for relatively brief lengths of time." Id. at 25. The ALJ found that Anthony had earned $17,313.24 in 2015 and $15,800 in 2016. Id. This amount exceeded the threshold amount for substantial gainful activity for both years. Id. As a result, the ALJ found that Anthony had begun performing substantial gainful activity in July 2015, resulting in the termination of benefits in October 2015. Id. Because of the termination, he was overpaid in the amount of $37,759.60 from the period October 1, 2015, until March 1, 2017. Id.

Anthony had contended that while "his earnings have at times been above the presumptive level for substantial activity" his "work activity is tantamount to subsidized employment," and "thus should not be considered substantial gainful activity." Id. at 25-26. The ALJ rejected this argument. As relevant here, the ALJ noted that while at the January 2020 hearing, Anthony

> related receiving extra instruction, having others assigned to help him with work tasks, and being reassigned to other, typically simpler tasks, at the more recent hearing held by me in January 2023, the claimant stated that at the Convention Center he did not get special assistance. Instead, he described being allowed to work, but indicated he performed the work too slowly, which resulted in his promptly being let go from job assignments, although he worked at the Javits Convention Center "on and off" for somewhat more than a year.
>
> Similarly, when the claimant was asked in October 2016 whether he worked under any special conditions during his work for the New York Convention Center Operative Corp. . . . he denied receiving any such special assistance or accommodations

Id. at 26 (citation omitted). The claimant also testified that as recently as December 2022 he had received $5,000 to $6,000 for approximately 10 days of work. Id.

4

The ALJ found that there was "no substantial evidence that the claimant's work for the period in question beginning in July 2015 was in any way subsidized." Id. at 27. Additionally, the ALJ found "no evidence of any disabling condition due to TBI or any other condition." Id. The ALJ also found "no . . . evidence" that Anthony "was often let go because he did the work too slowly," as Anthony had reported. Id. The ALJ based this conclusion on a number of treatment notes in the record recounting statements by Anthony. Id. at 27-29. For instance, in an August 2016 note, Anthony indicated that he worked "3 to 5 days a week, but up to 7 days during the auto show." Id. at 27. Additionally,

> [s]ubsequent records through the date of overpayment, and beyond, often noted that he wished to work more hours, which were sometimes not available due to general economic considerations, and that things were going "okay" at his job, while at other times indicating the claimant was working increased hours, sometimes at other positions besides the Convention Center.

Id. In March 2017, Anthony "indicated he might not be able to come to therapy sessions during the Auto Show at Javits Center due to being too busy at work." Id. at 28. Similarly, "[b]y April 2017, the claimant reported to providers that he had been enjoying his work and working many hours during the Auto Show, making extra money with which he was paying bills and looking forward to remaining busy." Id. The ALJ also noted that Anthony had taken courses to become a shop steward. Id. at 29, 45.

The ALJ concluded, after a review of the available evidence that

> for the period in question from October 2015 to March 2017[,] [t]here was no indication or evidence that any accommodations were being made for claimant in his job performance. Indeed, the claimant had the wherewithal to complete courses to become a shop steward, which suggests that the claimant has a substantially higher degree of functioning than alleged. Meanwhile, treatment records for that same period do not document any limits in memory, concentration, cognition, or attention, or any significant limits in ability to function due to the claimant's history of TBI, with the claimant's fluctuating work activity seemingly attributed primarily to the sporadic nature of his industry's work schedules. Indeed, in April 2018, one of the claimant's own bosses reported

5

> to providers that the claimant had been able to do his work satisfactorily until recent months, while the subsequent record since the end of the period at issue indicates the claimant's issues stemmed in large part from situational factors, such as complicated grief, inconsistent adherence to medications, alcohol use, and stress around the pandemic,, [sic] rather than any TBI-related deficits.

Id. at 29 (citations omitted)

Anthony also argued that "collateral estoppel applies in this matter, based on a previous Administrative Law Judge decision issued in November 2009." Id. at 26. The ALJ rejected this argument, noting that while "[i]n the prior instance, there were multiple reports of accommodations" made to Anthony," for the period in question . . . there is no evidence of accommodation." Id. at 29.

Anthony argued that the fact that he "was only sent to do the most basic jobs indicates his performance is unsatisfactory." Id. at 30. The ALJ found this argument "unpersuasive" because "[t]he fact that the claimant is only able to perform a basic unskilled job at substantial gainful activity does not necessarily indicate his job performance is unsatisfactory." Id. The ALJ found that Anthony "was fully capable of performing basic, unskilled work as jobs were available and at a substantial gainful activity level" and the record did not show "that he was receiving special accommodations or subsidies of any sort." Id.

    C.    April 25, 2024, Decision

On April 25, 2024, the Appeals Council issued the agency's final decision by adopting the decision of the ALJ in all respects except for the ALJ's findings on waiver. Id. at 5-6. Specifically, the Appeals Council held that the ALJ's

> decision provides rationale that addresses the claimant's arguments and finds that his work was not subsidized, he engaged in substantial gainful work activity in July 2015 and his entitlement to benefits terminated in October 2015 (pages 3-8). The Council agrees with and adopts that rationale and finds that the claimant's disability ceased due to substantial gainful work activity in July 2015, his

6

>entitlement to benefits terminated in October 2015, and he was overpaid $37,759.60 in benefits from October 2015 through February 2017.

Id. at 5. With regard to the waiver issue, the Appeals Council found that "[w]aiver was not an issue before the Administrative Law Judge since the claimant did not file a waiver request and no waiver determinations were made by the Administration." Id. Thus, the Council "vacate[d] the Administrative Law Judge's waiver findings." Id.

II. LEGAL STANDARD

    A. Scope of Judicial Review

Under, 42 U.S.C. § 404(a), the Commissioner is required by statute to recover overpaid benefits. Where review is sought of any decision of the Commissioner, it is governed by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." A court reviewing a final decision by the Commissioner is thus "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008)).

"If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'" Ayala v. Kijakazi, 620 F. Supp. 3d 6, 14 (S.D.N.Y. 2022) (punctuation omitted) (quoting Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam)).

7

Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375. "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted) (quoting Consol. Edison Co., 305 U.S. at 229). The "threshold for such evidentiary sufficiency is not high." Id.

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)); accord McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). The Second Circuit has characterized the "substantial evidence" standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault, 683 F.3d at 447-48 (citation omitted). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would <u>have to conclude otherwise</u>." Id. at 448 (citation and punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citation and punctuation omitted).

8

III.    DISCUSSION

Here, plaintiff seeks review of the agency's decision that there was an overpayment, which is permitted by regulation. See 20 C.F.R. § 404.522. Anthony argues that (1) the Commissioner has not met his burden of proving that Anthony performed substantial gainful activity because "[t]he record is replete" with evidence indicating that Anthony did not perform substantial gainful activity; (2) the Commissioner's claim to recover any "purported overpayment" is "barred by the doctrine of collateral estoppel"; (3) that if the challenged "determination was wrongful," Anthony "is entitled to restoration of his benefits, together with any retroactive benefits from which he was wrongfully deprived"; and (4) even if "the overpayment assessed by the Defendant was proper," this Court "should nonetheless waive collection of same." Mem at 8-15. We address these arguments in turn

    A.    Whether There Has Been an Overpayment in Benefits

        1.    Governing Regulations

The governing regulations provide that any entitlement to disability evidence ends if the claimant engages in "substantial gainful activity" following an initial "trial work period." See 20 C.F.R. §§ 404.1592(a), 404.1594(a). Anthony's challenge to the agency's determination of overpayment rests on his contention that he was not in fact engaged in "substantial gainful activity." The regulations define "substantial work activity" as "work activity that involves doing significant physical or mental activities." Id. § 404.1572(a). The regulations add that "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Id. The regulations define "gainful work activity" as "work activity that you do for pay or profit. Work activity is gainful if

9

it is the kind of work usually done for pay or profit, whether or not a profit is realized." Id. § 404.1572(b).

The regulations allow the agency to take into account the "nature" of the claimant's work and "how well" the claimant "perform[s]" and the "time spent at work." Id. § 404.1573(a), (b), (e). The regulations provide, however, that the "time you spend in work" is not determinative. Id. § 404.1573(e). Rather "[w]e will still evaluate the work to decide whether it is substantial and gainful regardless of whether you spend more time or less time at the job than workers who are not impaired and who are doing similar work as a regular means of their livelihood." Id.

A separate provision addresses work done under "special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital." Id. § 404.1573(c). If work is done under special conditions, the agency "may find that it does not show that you have the ability to do substantial gainful activity." Id. The regulations list a number of factors to be considered that may constitute "special conditions." Id.

The regulations provide that in determining SGA, the "primary consideration will be the earnings you derive from the work activity." Id. § 404.1574(a)(1). The regulations also provide that if an individual has monthly earnings above a level described in the regulations, it will "ordinarily show that you have engaged in" SGA. Id. § 404.1574(b)(2). The applicability of the monthly earnings threshold is not at issue because it is uncontested that Anthony earned above the presumptive monetary threshold amount for substantial gainful activity. See R. at 25. Specifically, Anthony reported that from July 2015 through December 2015, he earned $10,645.00, an average of $1,774 a month. Id. at 110. The presumptive monthly monetary threshold for substantial gainful activity was $1,090 for 2015. See U.S. Soc. Sec. Admin., Program Operations Manual Systems ("POMS"), DI 10501.015(B). Anthony reported that from

10

January 2016 to June 2016, he earned $15,799.98, an average of $2,633.33 a month.  R. at 110.  The presumptive monthly monetary threshold for substantial gainful activity of was $1,130 for 2016.  See POMS DI 10501.015(B).

        2.        Anthony's Arguments

Anthony argues that "[t]he testimony presented by the Plaintiff at the [January 9, 2020, hearing and the January 3, 2023, hearing] certainly prove that he was not participating in substantial gainful activities."  Mem. at 9.  Anthony argues that the "[t]he record is replete" with evidence showing that Anthony's "activities involved sheltered work, that he could not properly perform job functions and in fact were placed [sic] because he was a union carpenter and the union as [sic] obliged to find a place for him."  Id. at 8.  Additionally, Anthony notes that he "testified as to his inability to perform job assignments."  Id.  Specifically, Anthony argued that his testimony showed that he

> could not perform ordinary and simple tasks (requiring hours to perform that other workers could perform in minutes), required more supervision and assistance than others, doing work which involved little or no demands on him and doing work which was of little use to his employer (reflected by his almost immediate dismissal by his employers.

Id. at 9.  Thus, he argues, "his work fit exactly within the definition of work which was not substantial gainful activity."  Id.  Additionally, Anthony highlights that "his pay level of $54 per hour can only be subsidized income paid solely a [sic] result of his union membership and not due to his work activities."  Id. (citation omitted)

Anthony concludes that "the alleged overpayment bears no relation to the facts and the Defendant has offered no facts to meet its burden of proof on either the existence or amount of any overpayment."  Id. at 10.

11

We begin by noting that Anthony misapprehends the legal standard for evaluating the agency's determination. Anthony asserts that the evidence he presented at the hearing "is sufficient to establish that substantial gainful activity was not performed." Id. at 8. The task before this Court, however, is not to determine whether Anthony's evidence was "sufficient" to allow a finding that he did not engage in SGA. Instead, the Court is presented with a vastly different task: to determine whether the ALJ's decision was supported by "substantial evidence." As already noted, the substantial evidence standard means "once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault, 683 F.3d at 448 (citation and punctuation omitted). Thus, it may well be true that Anthony presented "sufficient" or even "substantial" evidence to allow an SGA finding in his favor. But as case law recognizes, "even if substantial evidence supporting the claimant's position . . . exists," this Court must uphold the Commissioner's decision as long as it is also supported by substantial evidence. Johnson, 563 F. Supp. 2d at 454. Additionally, Anthony incorrectly states that the Commissioner has the "burden of proof" on the question of whether he engaged in SGA. Mem. at 10. However, because the amount of his earnings are above the threshold in the regulations for presuming SGA "[t]he burden . . . shifted to" Anthony "to rebut [the] presumption of having engaged in SGA." Bongarzone v. Comm'r of Soc. Sec., 2015 WL 1941332, at *11 (S.D.N.Y. Apr. 29, 2015)

We turn next to the various arguments raised by Anthony.

As to the nature of Anthony's earnings, the regulations provide that when the Administration decides whether "earnings show that [the claimant has] done substantial gainful activity, [the Administration] do[es] not consider any income that is not directly related to [the

claimant's] productivity." 20 C.F.R. § 404.1574(a)(2).  Specifically, the Social Security Administration's regulations explain that

> [w]hen your earnings exceed the reasonable value of the work you perform, we consider only that part of your pay which you actually earn.  If your earnings are being subsidized, we do not consider the amount of the subsidy when we determine if your earnings show that you have done substantial gainful activity.  We consider your work to be subsidized if the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work.

Id.  Additionally, "[i]f [a claimant is] working in a sheltered workshop, [they] may or may not be earning the amounts [they] are being paid."  Id. § 404.1574(a)(3).

Here, there is substantial evidence in the record to support the ALJ's findings that these exceptions do not apply to Anthony.  Anthony points to a number of letters that date before 2002, see Mem. at 4-5, that purportedly show "the slack [sic] of success of [plaintiff's] services," id. at 4.  The ALJ was entitled to discount these letters as not reflecting Anthony's current activities.  Indeed, the ALJ recognized that Anthony had "previously related receiving extra instruction, having others assigned to help him with work tasks, and being reassigned to other, typically simpler tasks."  R. at 26.  The record presented to the ALJ as to his work in 2017 was of a different character, however.

Anthony also points to his testimony from the 2020 and 2023 hearings, arguing that the testimony "prove[s] that he was not participating in" SGA.  Mem. at 5-7, 9.  He characterizes the testimony as showing that

> Plaintiff could not perform ordinary and simple tasks (requiring hours to perform that other workers could perform in minutes), required more supervision and assistance than others, doing work which involved little or no demands on him and doing work which was of little use to his employer (reflected by his almost immediate dismissal by his employers).

Id. at 9.

13

Anthony did testify in such terms at the hearings. See, e.g., R. at 38, 72-73, 82-93. For example, on January 9, 2020, Anthony testified "I don't perform the work like everybody else and they see that and that's why I get laid off. I only stay a day or two and that's it. They let me go." Id. at 72. But plaintiff's brief completely ignores the record relied on by the ALJ to find that Anthony's work amounted to SGA. For instance, the ALJ pointed to numerous treatment records containing Anthony's descriptions of the nature of his employment as indicating that his work was not "in any way subsidized." Id. at 27. The ALJ noted that the treatment records instead indicated

> that [Anthony] wished to work more hours, which were sometimes not available due to general economic considerations, and that things were going 'okay' at his job, while at other times indicating the claimant was working increased hours, sometimes at other positions besides the Convention Center. Further, treatment records did not document any significant limits in, or concerns regarding, the claimant's memory, concentration, attention, or other cognition abilities related to his history of TBI.

Id. (citations omitted). The ALJ also directly addressed Anthony's claim that he was working slowly: "[b]y April 2018, the claimant was laid off from another position which, rather than being due to his working too slowly, it was reported was due to his working too quickly and 'rushing' through his work, in a manner that might have been perceived as careless or unsafe." Id. at 28.

Additionally, the ALJ noted a social security "Work Activity Report," dated October 26, 2016, that severely undermined the claim that plaintiff was getting assistance in the workplace. Id. at 30 (citing id. at 112). In the section of the report inquiring whether he worked under any "[s]pecial [c]onditions," such as whether he had "fewer or easier duties than other workers," was "[a]llowed to produce less work than other workers," was "[g]iven work that was suited to [his] condition," or "[h]ad extra help, extra supervision or a job coach," Anthony indicated that

"[n]one of the above apply." Id. at 112. Further, Anthony reported — apparently in his own words — "I did not receive any special assistance. I was not allowed any additional breaks. I was not allowed to perform lighter duties than anyone else on the job." Id. Accordingly, the record supplied substantial evidence that Anthony's work was not subsidized and that he did not work in a sheltered workshop or its equivalent.

B. <u>Whether Collateral Estoppel Prevents the Administration's Recovery</u>

Anthony argues that issue preclusion bars the Administration's recovery of any "purported overpayment against" Anthony because of an earlier administrative decision that determined that Anthony had not performed substantial gainful activity." Mem. at 13. Specifically, Anthony argues that the Administration's present claim is the same as the claim rejected in 2009 by an ALJ, "without any evidence of any change or [sic] circumstances or facts." Id. Thus, Anthony argues, the Administration's "claim is barred by the doctrine of collateral estoppel." Id.

The doctrine of issue preclusion has been codified in the Social Security Administration's regulations. Specifically, 20 C.F.R. § 404.950(f) provides:

> Collateral estoppel—issues previously decided. An issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under a different title of the Act or under the Federal Coal Mine Health and Safety Act. If this happens, the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong.

"Administrative <u>res judicata</u> is appropriately applied where a prior determination on the same facts and issues made by the Commissioner has become final by either administrative or judicial action." Navan v. Astrue, 303 F. App'x 18, 20 (2d Cir. 2008); accord Bushey v. Berryhill, 739 F. App'x 668, 671 (2d Cir. 2018).

15

Here, issue preclusion does not apply. In the December 17, 2007, decision by the agency, and in the November 16, 2009, review of that decision by an ALJ, the question was whether Anthony had engaged in SGA such that Anthony was no longer disabled as of September 1, 2002. R. at 170. However, in the decision before the Court, the ALJ was called upon to determine whether Anthony engaged in SGA starting in July 2015. Id. at 126. Thus, the two administrative adjudications involved a different set of facts. See Bushey, 739 F. App'x at 672 (finding that while issue preclusion applied to a determination of whether plaintiff was disabled before April 18, 2012, it did not bar plaintiff's argument that she was disabled as of April 19, 2012).

The record reflects other significant factual differences between the two situations. For instance, the record reflects that on June 7, 2001, one of Anthony's employers indicated in a questionnaire by the Social Security Administration that Anthony's work was not "fully worth the amount paid" and that Anthony worked "[f]ewer or easier duties," had a "[l]ower production," needed "[e]xtra help/supervision," and had "[l]ower quality" work. R. at 178. Specifically, the employer noted that Anthony "is not able to install furniture in a productive way. He is disruptive to the work flow." Id. at 179. For the period in question — October 2015 to March 2017 — no indications of similar complaints were presented. As noted above, Anthony even indicated, in an October 2016 form, that he "did not receive any special assistance," "was not allowed any additional breaks," and "was not allowed to perform lighter duties than anyone else on the job." Id. at 112. Additionally, on April 11, 2018, Anthony's employer at the Javits Center "agreed that [Anthony] ha[d] been able to do the work satisfactorily until recent months," when Anthony apparently began exhibiting "problem behavior on the job" as a result of Anthony's "ongoing grief" surrounding the death of his teenage son. Id. at 860.

16

Because the Commissioner's December 17, 2007, decision pertains to a different set of facts than those before the Commissioner in the instant case, the doctrine of collateral estoppel does not apply.

    C.    <u>Whether Repayment Should Be Waived</u>

Anthony argues that should "this court . . . determine that the overpayment assessed by the Defendant was proper . . . it should nonetheless waive collection of same." Mem. at 15. In support, Anthony relies on provisions of the Social Security Act which provide that, in the case of overpayment, there shall be no recovery from "any person who is without fault" if it is also the case that such a recovery "would defeat the purpose of [Title II of the Social Security Act] or would be against equity and good conscience." 42 U.S.C. § 404(b)(1); <u>see</u> Mem. at 15 (citing 20 C.F.R. 404.506(a)). Anthony argues that he was not at fault and that recovery would defeat the purposes of the Act or be against equity and good conscience. Mem. at 15.

On this issue, the Appeals Council had vacated the ALJ's waiver finding because "[w]aiver was not an issue before the Administrative Law Judge since the claimant did not file a waiver request and no waiver determinations were made by the Administration." R. at 5. As to this issue, the Commissioner urges that "[t]his issue is not ripe for review as Plaintiff never requested a waiver of his overpayment. . . . Without submitting a waiver request to the Agency, along with the submission of all requested and required evidence, waiver cannot be extended." Opp. at 18.

42 U.S.C. § 404(a)(1) specifies that, in the case of overpayment, "proper adjustment or recovery shall be made" under "regulations prescribed by the Commissioner of Social Security." The corresponding federal regulation, 20 C.F.R. § 404.506, sets out a specific set of procedures to determine whether overpayment should be waived. Accordingly, the Administration will

17

make determinations of whether recovery should be waived only "when an individual requests waiver." Id. § 404.506(b). Such a request must include "information to support his/her contention that he/she is without fault in causing the overpayment and that adjustment or recovery would either defeat the purpose of title II of the Act or be against equity and good conscience," along with "supporting documentation." Id. § 404.506(d) (citations omitted).

> Additionally,
>
> [i]n making . . . any determination of whether such adjustment or recovery would defeat the purpose of this subchapter, the Commissioner of Social Security shall require an individual to provide authorization for the Commissioner to obtain . . . from any financial institution . . . any financial record . . . held by the institution with respect to such individual whenever the Commissioner determines the record is needed in connection with a determination with respect to such adjustment or recovery.

42 U.S.C. § 404(b)(3)(A).

Here, Anthony points us to no place in the record indicating that he filed a waiver request. See id. at 5; Opp. at 18. Anthony appears to concede this fact in his reply brief. See Reply at 8 ("the Appeals Council refused to consider the issue of whether a waiver could be granted because an application for same had not been filed"). While Anthony argues that enforcement of this provision would be against "equity and good conscience," id. at 8, he gives no reason why requiring compliance with the regulation would not be equitable.

The Commissioner suggests that "if Plaintiff were to submit a written request for waiver with the necessary supporting information (forms SSA-632 and SSA-4641), the Court could stay or remand this matter for consideration of new and material evidence." Opp. at 18 n.5. Anthony agrees with this suggestion. Reply at 9. Accordingly, we will accede to the Government's proposed course of action and remand the case to allow for consideration of a waiver request.

IV.     CONCLUSION

For the foregoing reasons, Anthony's motion for judgment on the pleadings (Docket # 24) is denied.

Notwithstanding this fact, and at the suggestion of the Government, this case is hereby stayed to allow Anthony to promptly present a waiver request in conformance with Social Security Administration rules. If Anthony files a letter to the Court on or before August 12, 2025, indicating that he has submitted such a request, the Court will enter judgment remanding this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) to take action on that request. If no such letter is filed by August 12, 2025, the Court will enter judgment on the Court's denial of plaintiff's motion.

SO ORDERED.

Dated: July 15, 2025

New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge